■ Patricia D. Dailey, Respondent, v Mazel Stores, Inc., et al., Appellants. [766 NYS2d 178] —Order, Supreme Court, New York County (Marylin Diamond, J.), entered January 8, 2003, denying defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

On November 26, 1997, plaintiff, a customer in an Odd Job store located at 390 Fifth Avenue in Manhattan, was injured when a box fell on her. Over three years later, on or about May 3, 2001, she commenced an action against defendants Mazel Stores, Inc. and Odd Job Trading Corp. to recover for these

injuries. Defendants' answer contained six affirmative defenses, including the statute of limitations. Defendants thereafter moved for a summary dismissal of the complaint based on plaintiff's untimely commencement of the action. Plaintiff cross-moved to strike the statute of limitations defense, arguing that defendants and their insurer engaged her in settlement negotiations in a way that lulled her into allowing the three-year statute of limitations to run without commencing an action.

In support of her claim plaintiff submitted an affidavit alleging that over the operative three-year period defendants' insurer, CNA Insurance Company, contacted her on several occasions, the first of which occurred about a month after the accident. On or about December 30, 1997 the insurer sent follow-up correspondence to plaintiff. In or about March 1998, as compensation for her injuries, plaintiff received a check for $250, which she returned "as it was an insult for the suffering [she] was going through." Later that year, CNA sent plaintiff a general release, which she refused to sign, and a $3,000 check that she never cashed. In general terms, she alleges that thereafter she dealt with a Steve Lockowski* of CNA through March of 2001, four months past the expiration of the statute of limitations. She claims that Lukowski repeatedly assured her not to worry and that they "would work this matter out." In each conversation, she claims, Lukowski told her "to see what the doctor says and we will see what we can do." Distilled to its essence, plaintiff's claim of equitable estoppel is captured by her statement: "I understood from his words that there was no need for me to obtain an attorney and that the insurance company would offer me a settlement that would compensate me for my injuries. As such I did not contact an attorney and was never aware that there was a three year time limit."

Lukowski's affidavit paints an entirely different picture. As he describes the events, his last conversation with plaintiff was on January 13, 2000, over 10 months before the statute of limitations expired. At that time she promised to forward a copy of an MRI with respect to her claim of a tear in her ankle. Approximately one month later, on February 16, 2000, Lukowski attempted unsuccessfully to telephone plaintiff to obtain that requested medical documentation. Earlier, in September 1998, settlement negotiations had taken place as a result of which CNA offered plaintiff $2,750, which was not accepted, to dispose of the matter. Thereafter, CNA forwarded plaintiff a release, never executed, for $3,000 in an attempt to settle the claim. On March 5, 1999 plaintiff telephoned CNA and provided an

---

* His last name is Lukowski.

address at which she could be reached at a hotel on the Upper West Side of Manhattan. Nothing further was heard from plaintiff until September 21, 1999, when Lukowski received a telephone message that plaintiff was considering surgery on her ankle. Lukowski left a message for plaintiff that was never returned. Lukowski called again on September 28, 1999 but again could not reach plaintiff. On November 10, 1999 Lukowski did speak to plaintiff, who advised that she was wearing a brace and would soon learn whether surgery was an option. One month later, on December 9, plaintiff called to advise that she was seeing her doctor on December 14, 1999 and that an MRI had shown a tear in the ankle. Lukowski diaried the matter for 45 days and spoke to plaintiff on January 13, 2000, which, as noted, was CNA's last contact with her. At that time, plaintiff was still uncertain as to whether she would have ankle surgery. Lukowski made a notation to re-evaluate the claim upon receipt of plaintiff's medical documentation. Nothing was forthcoming and, on November 29, 2000, over 10 months after his last conversation with plaintiff and after speaking with his supervisor, Lukowski closed out the file. According to Lukowski, in March of 2001, after receiving a message from plaintiff, he reiterated the previous offer of $3,000 despite the running of the statute of limitations almost four months before.

Supreme Court found a triable issue of fact as to whether the settlement discussions between plaintiff and CNA "were intended to lull her into inactivity." The court did not rule on plaintiff's cross motion to strike the affirmative defense. Since we find, as a matter of law, that the doctrine of equitable estoppel does not apply in the circumstances presented, the complaint should be dismissed.

Plaintiff's affidavit fails to disclose any conduct on CNA's part that can be construed as calculated to lull plaintiff into postponing the commencement of a lawsuit. There is no showing of deception, fraud or misrepresentation on the part of CNA (*see Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]) or conduct calculated to mislead plaintiff, who, in reliance thereon, failed to commence a timely action (*see Robinson v City of New York*, 24 AD2d 260, 263 [1965]). "It is well-settled law in New York that the mere fact that settlement negotiations have been ongoing between parties is insufficient to estop a party from asserting the Statute of Limitations as a defense" (*Kiernan v Long Is. R. R.*, 209 AD2d 588, 589 [1994] *appeal dismissed, lv denied* 85 NY2d 934 [1995]). Here, while there were settlement negotiations, sporadic to be sure, neither

Lukowski nor any other CNA representative took any steps, by representation or otherwise, to lull plaintiff into inaction until after the statute of limitations had run. Plaintiff's averments about conversations continuing into March of 2001 are general, without any specifics as to dates or the content of the discussions and are obviously calculated to create an issue of fact where none exists. Lukowski's well-documented account of a 10-month hiatus between his last conversation with plaintiff and the expiration of the statute of limitations dispels, as a matter of law, any claim that plaintiff was lulled into inaction. Concur—Andrias, J.P., Saxe, Sullivan, Rosenberger and Marlow, JJ.